LINDSAY, Judge.
Plaintiff, Mack Banks, appeals from the judgment of the trial court affirming the decision of the Board of Review of the Louisiana Office of Employment Security, denying the plaintiff’s claim for unemployment compensation benefits. We affirm.
The plaintiff had been employed by the Louisiana Department of Corrections at the Wade Correctional Center in Haynesville since December 19, 1980. He was a Correctional Security Officer II. Plaintiff worked from 6:00 a.m. until 2:00 p.m., five days a week as scheduled. During the *1068 course of his employment, the plaintiff was subjected to disciplinary action on several occasions for violations of his employer’s rules and regulations. This included at least three suspensions from work for failing to perform his duties properly and for failing to report to work on time. Plaintiff was on suspension when he was notified by a letter from the Secretary of the Department of Public Safety and Corrections that, effective January 18, 1985, he would be removed from his position at the Wade Correctional Center. The letter indicated that on November 8, 1984, another correctional officer had observed the plaintiff violating written orders regarding the consumption of food from the inmates’ “chow cart.” The letter further related the plaintiff’s actions subsequent to this incident and enumerated the following Department of Corrections rules which the plaintiff had violated. (1) The rule requiring employees to obey all authorized regulations, policies and procedures; (2) the rule requiring employees to obey all direct orders cooperatively and promptly; and (3) the rule forbidding the intentional making of false statements or deliberately omitting important facts to anyone conducting an investigation for the department.
After his termination, the plaintiff applied for unemployment compensation benefits. The Office of Employment Security denied the plaintiff’s claim, finding that he was disqualified from receiving benefits, as his discharge was for misconduct connected with his employment. The agency determined that the plaintiff was discharged because of his failure to abide by department rules and policies of which he was aware.
The plaintiff appealed this decision and a hearing was held before an appeals referee of the Louisiana Office of Employment Security. The plaintiff and several representatives of his employer appeared and testified at the hearing. The appeals referee concluded that the employer had shown by a preponderance of the evidence that the plaintiff was discharged for deliberate violations of the employer’s rules of which the plaintiff was aware. The referee affirmed the agency’s determination that the plaintiff was disqualified from receiving unemployment compensation benefits for misconduct connected with his employment. The referee also modified the agency determination, however, to indicate that the disqualification was effective January 4, 1985, the plaintiff’s last day of work.
After a review of the record, the decision of the appeals referee was affirmed by the Board of Review. The plaintiff then petitioned for judicial review in the Second Judicial District Court. In a judgment signed August 29, 1985, the district court affirmed the decision of the Board of Review and dismissed the plaintiff’s petition.
On appeal, the plaintiff asserts only one assignment of error. He contends that the trial court erred in affirming the decision of the Board of Review denying unemployment compensation benefits, as there was not “sufficient evidence” to sustain the Board’s determination. The plaintiff argues that the documentary evidence that was introduced in support of the employer’s claim of the plaintiff’s misconduct was hearsay, as was some of the testimony of witnesses at the hearing before the appeals referee. We agree that a portion of the evidence considered by the appeals referee was hearsay; however, we affirm the decision of the trial judge. Eliminating the incompetent evidence, there remains other sufficient evidence in the record to support the findings of the appeals referee and the Board of Review.[1]
*1069 Judicial review in unemployment compensation cases is limited by LSA-R.S. 23:1634, which states in pertinent part:
... In any proceeding under this Section the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law....
As restated by this court in Harris v. Administrator, Louisiana Office of Employment Security, 480 So.2d 886 (La.App. 2d Cir.1985), writ denied 481 So.2d 1338 (La.1986), the determination that must be made is whether the findings of fact made by the Board of Review are supported by sufficient evidence and, if so, whether the decision of the Board of Review is correct as a matter of law. In Harris, supra, it was further stated that:
LSA-R.S. 23:1601(2) provides in pertinent part that an individual shall be disqualified for benefits “... for misconduct connected with his employment.”
Misconduct has been defined by the jurisprudence as a willful or wanton disregard for the employer’s interest, a deliberate violation of the employer’s rules, a direct disregard of standards of behavior which the employer has the right to expect from his employees or negligence in such a degree or recurrence as to manifest culpability, wrongful interest, or evil design, or show an intentional and substantial disregard of the employer’s interest or of the employee’s duties and obligations to the employer....
The employer has the burden of proof by a preponderance of the evidence that the employee’s discharge resulted from disqualifying misconduct.... The issue of misconduct is primarily a factual one to be determined by the administrator and the Board of Review. However, there must be legal and competent evidence to support the factual findings upon which the administrative determination turns. Further, the determination made must meet “a threshold test of reasonableness” or it is erroneous as a matter of law. [Citations omitted.]
The plaintiff in this case is correct in his contention that “sufficient evidence,” as contained in the statute setting forth the standard of judicial review, means legal and competent evidence. Banks v. Administrator of Department of Employment Security of State of Louisiana, 393 So.2d 696 (La.1981). Hearsay is not considered sufficient evidence. Southeastern Louisiana University v. Shelton, 431 So.2d 432 (La.App. 1st Cir.1983). The usual rules of evidence need not apply to an administrative hearing and therefore hearsay is admissible in such a hearing, LSA-R.S. 23:1631; Hall v. Doyal, 191 So.2d 349 (La. App. 3rd Cir.1966). Nevertheless,
... the findings of the administrative agency must be supported by competent evidence, and incompetent evidence admitted at the hearing will be disregarded by the courts upon their judicial review to determine if the agency’s findings are supported by sufficient evidence as required by law. Gardere v. Brown, La. App. 1 Cir., 170 So.2d 758.
[[Image here]]
On judicial review of the unemployment agency’s finding, the court cannot redetermine the sufficiency of proof nor the agency’s credibility evaluations nor its reasonable factual inferences, so long as the agency’s findings are supported by some competent evidence. [Citations omitted.]

Hall v. Doyal, supra.

In this case, therefore, we must determine if the trial court was correct in its determination that there was sufficient competent evidence, disregarding any hearsay evidence, to uphold the decisions of the appeals referee and Board of Review.
At the administrative hearing before the appeals referee, testimony was presented by the plaintiff, Lynn Hutson, a personnel technician at the Wade Correctional Center, Captain R.M. Compton, a shift supervisor at Wade Correctional Center and Major Jerry Cantrell, also a shift supervisor. The evidence and testimony presented by these *1070 witnesses revealed the following chain of events.
Several weeks prior to the alleged incident on November 8, 1984, the plaintiff was seen by Captain Compton eating from a tray of food that had been prepared for an inmate. The plaintiff denied this occurrence; however, Captain Compton testified that he did catch the plaintiff in this act, that he told the plaintiff that his actions were prohibited by the Department’s rules and that he should not let it happen again.
On November 8, 1984, one of the plaintiffs co-workers, Lester Wyatt, another correctional security officer, observed the plaintiff consuming food, milk, and coffee from an extra breakfast tray off of the inmates’ “chow cart.” The plaintiff had access to the cart as the correctional security officers occasionally assisted in the distribution of meal trays to the inmates. Major Cantrell, the shift supervisor, was informed of the plaintiff’s actions and asked Captain Compton to investigate the alleged incident.
Captain Compton spoke to the plaintiff concerning the allegations against him, whereupon the plaintiff denied consuming any items from an extra food tray. The plaintiff stated that he had offered the extra tray to one of the inmates. He testified at the hearing before the appeals referee that this inmate took the milk, coffee and juice from the tray and refused the rest. The plaintiff stated he then left the tray in a room adjacent to the cell block, while he continued to assist in the distribution of breakfast. When he finished, he retrieved the tray, disposed of the remainder of its contents and placed it back on the cart.
After speaking with the plaintiff, Captain Compton asked him to identify the inmate who had received the extra food items. The plaintiff pointed out one inmate, but retracted this identification, indicating that it was the inmate in the next cell who had received the extra items. This inmate was asleep when Captain Compton and the plaintiff approached his cell. Captain Compton instructed the plaintiff to awaken the inmate, but not to say anything about the investigation. The plaintiff did not comply with this request, however, and told the inmate that he was going to be questioned about “the extra tray that I gave you this morning.” The inmate was then questioned by Captain Compton alone and stated that he had received a second food tray from the plaintiff. Captain Compton relayed this information to Major Cantrell.
Major Cantrell testified that, subsequently, this inmate requested a meeting with him, at which time the inmate changed his story and stated he had not received any extra food items from the plaintiff. He revealed that he was changing his story because he did not want to be a part of something that he was not involved in and that he had lied to Captain Compton because he had not wanted to get an officer in trouble.
A transcribed copy of the inmate’s statement and a written statement by Correctional Security Officer Wyatt were introduced, without objection, in evidence at the hearing before the appeals referee. The plaintiff did object to the introduction into evidence of the record of the disciplinary actions taken with respect to his previous misconduct. The plaintiff indicated that he did not agree with the number of suspensions shown thereon.
Lynn Hutson testified at the hearing with regard to the plaintiff’s personnel file. She stated that his record indicated that the plaintiff had been suspended at least three times prior to his termination and that he had received verbal warnings and reprimands as well. She noted that the plaintiff’s termination for violating the Department’s rules and procedures was a matter of “progressive discipline.”
On appeal, the plaintiff argues that his co-worker, the one eyewitness to the alleged incident on November 8, 1984, was not present at the hearing to testify and therefore, the plaintiff was denied the opportunity to cross examine him. He contends that the statement made by this offi *1071 cer which was placed in the record was, therefore, hearsay evidence and should not have been considered in upholding the agency and Board of Review determinations. Omitting this hearsay evidence and the testimony of the two supervisors concerning what this co-worker told them concerning the alleged incident, we find that the remainder of the evidence is still sufficient to prove that the plaintiff was guilty of misconduct connected with his employment. Therefore, the plaintiff was properly denied unemployment compensation benefits.
Captain Compton testified that it was against the rules to give inmates extra trays and that he had previously warned the plaintiff about eating from inmate’s trays. Although this was contradicted by the plaintiff, the appeals referee made a credibility determination concerning these two opposing witnesses. From his decision, it is evident that he accepted the testimony of the supervisor that the plaintiff had deliberately violated the employer’s rules.
Major Cantrell stated that he heard of this incident from the co-worker who viewed the plaintiff violating the rules. This testimony concerning what the coworker saw of the incident would be hearsay and could not be used to determine whether the plaintiff’s employer had sustained its burden of proof. However, the Major’s testimony was admissible to indicate that the statements were made and that as a result, the Major launched his own investigation to determine what action should be taken. See Southeastern Louisiana University, supra.
The inmate’s statement which was admitted into the record would also be considered hearsay, however, the plaintiff himself indicated that he was aware of the fact that the inmate had made two contradictory statements to the supervisors concerning this matter.
The remaining evidence and testimony was competent and sufficient to support the finding that the plaintiff was guilty of misconduct. There was direct testimony that it was against the rules to give inmates extra trays and that the plaintiff had received prior warnings concerning his actions involving eating food from these trays. There was also direct testimony that he violated an employer’s command when told not to speak to an inmate and evidence that he was suspended on several occasions for failing to follow the employer’s rules and policies.
For these reasons, we find that plaintiff’s conduct showed deliberate violations of the employer’s rules and constituted misconduct sufficient to disqualify him from receiving unemployment compensation benefits. There was sufficient legal and competent evidence to support this finding of the administrative agency which was upheld by the appeals referee and Board of Review.
Accordingly, for the foregoing reasons, the decision of the trial court is affirmed, denying the plaintiff’s claim for unemployment compensation benefits.
AFFIRMED.

. It is noted that our opinion in the instant case is properly distinguishable from the opinion in Linda Faye Credit v. George Whitfield, Administrator of the Louisiana Office of Employment Security and St. Francis Medical Center, 488 So.2d 1064 (La.App. 2d Cir.1986), also rendered on this date. In Credit, the employer relied entirely upon hearsay testimony to prove the employee’s misconduct. The judgment of the trial court, upholding the decision of the appeals referee and the Board of Review which disqualified the employee from receiving unemployment compensation benefits solely on the basis of this evidence, was reversed.